IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:21-CV-110-FL

| | | |
|---|---|---|
| DONALD C. SEIFERT, JR. and DONNA P. SEIFERT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| U.S. BANK, N.A. and TRANS UNION, LLC, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on motion to dismiss for failure to state a claim (DE 39) by defendant U.S. Bank, N.A. ("defendant").[1] The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiffs commenced this action on May 10, 2021, in New Hanover County Superior Court, alleging breach of contract, tort, and statutory claims arising out of repossession and sale by defendant of plaintiffs' recreational vehicle ("RV"). Plaintiffs seek compensatory, trebled, and punitive damages, as well as attorney's fees, costs, and interest.

Plaintiffs' claims against defendant are as follows:

1. Breach of Contract (Claim One)

2. Conversion (Claim Two)

---

[1] Hereinafter in this order, all references to "defendant" in the singular, without qualification, are to defendant U.S. Bank, N.A. Defendant Trans Union LLC is referenced in this order specifically by its name.

3. Fraud (Claim Three)

4. Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1 et seq. (Claim Four)

5. Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (Claims Five and Six)

6. Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (Claim Eight)

7. North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 (Claim Nine).[2]

Defendant removed the action to this court on June 16, 2021. After three extensions of time to answer, defendant filed the instant motion to dismiss all claims against it for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded in opposition and defendant replied.

In the meantime, upon consent motion of the parties, the court stayed all pretrial and discovery deadlines in this matter pending the court's ruling on the instant motion. (See Sept. 21, 2021, Order (DE 30)).

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiffs are residents of New Hanover County, North Carolina. On May 6, 2010, they purchased the RV from Bill Plemmons RV World in Raleigh, North Carolina, for $37,078.97. "Plaintiffs financed $28,880.97 of the RV's purchase price at 9.99% for a term of 15 years from defendant," through a retail installment contract and security agreement (the "contract").[3] (Compl. ¶ 9). The contract contains the following provisions, in pertinent part:

---

[2]    Plaintiffs assert a separate claim for violation of Fair Credit Reporting Act against defendant Trans Union LLC, which has not joined the instant motion to dismiss, and which has filed an answer. Upon consent motion of the parties, the court stayed all pretrial deadlines and discovery pending ruling on the instant motion to dismiss.

[3]    The contract is attached to defendant's memorandum in support of the instant motion. The parties agree that the contract is referenced in the complaint, integral to plaintiffs' claims, and its authenticity is not disputed. Therefore, the court may consider it "as if it had been attached to the complaint" in ruling on the instant motion. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

2

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

    A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.

    B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.

    C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

    D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.

    E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.

    F. You will pay all taxes and assessments on the Property as they become due.

    G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

(Contract (DE 21-1) at 2).

**DEFAULT:** You will be in default on this Contract if you fail to perform any obligation that you have undertaken in this Contract.

    If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, reasonable attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract.

    If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

(Id.).

3

Case 7:21-cv-00110-FL   Document 32   Filed 05/02/22   Page 3 of 23

**REMEDIES:** Unless prohibited by law, if you are in default on this Contract, we have all of the remedies provided by law and this Contract:

    A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

    B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

    C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

    D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.

    E. We may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

(Id.).

    The contract requires 180 monthly payments in the amount of $310.18, for total payments in the amount of $55,832.40. (Id. at 1). Plaintiffs made their first monthly payment in June, 2010. (Compl. ¶11). They timely made 111 monthly payments through and including August, 2019, totaling $34,429.98. (Id. ¶ 12).

    In February 2013, plaintiff[4] entered into a brokerage agreement "with Magnum Marine ("Magnum"), a third-party vendor in Pender County, NC, to sell the RV." (Id. ¶ 13). In December 2017, Magnum emailed plaintiff, stating "we need to put it [RV] in storage @ $40.00 per month or reduce the price to where it is sale-able." (Id. ¶ 14). On February 21, 2018, plaintiff "received an email from Magnum stating it sent a storage agreement and bill for storage to Plaintiff, but both

---

[4] Hereinafter in this order, all references to "plaintiff" in the singular, without qualification, are to plaintiff Donald Seifert, Jr.

were returned to Magnum as undelivered." (Id. ¶ 15). Plaintiff replied to Magnum "asking Magnum if it could tow the RV to another sales location or recommend a trusted service to do so." (Id. ¶ 16). In June 2018, "having not heard from Magnum regarding moving the RV, Plaintiff again emailed Magnum and asked for confirmation that he was using the correct email address," to which "Magnum confirmed that the email address was correct, but did not respond to Plaintiff's inquiry about moving the RV." (Id. ¶ 16).

In September 2018, "[p]laintiff visited Magnum's physical location to inspect the RV." (Id. ¶ 18). "Because the premises were closed and locked, Plaintiff called the owner of Magnum," and the "owner indicated that [the] business was closed due to Hurricane Florence." (Id.). In February 2019, Mangum sent plaintiff an invoice for alleged storage fees, and asserted plaintiff allegedy had refused reasonable offers for the RV, which allegations plaintiff disputed and offered to settle. In May 2019, plaintiff "again went to the Magnum lot and inspected the RV but found no one working to speak with at the time." (Id. ¶ 24).

In July 2019, plaintiffs received a notice form the State of North Carolina Department of Transportation that "a mechanic's and/or storage lien had been asserted by Magnum" in the amount of $5,160.00 (the "alleged lien") (Id. ¶ 25). Plaintiff returned the notice with a request for judicial hearing, which the State of North Carolina acknowledged, with further notice to Magnum stating "if you wish to sell the vehicle, you should initiate the necessary action in a court of competent jurisdiction." (Id. ¶ 28). The foregoing State of North Carolina notices also were sent to defendant.

On August 19, 2019, "Plaintiffs received 'NOTICE OF OUR INTENT TO SELL PROPERTY' – North Carolina [sic] dated August 14, 2019," from defendant. (Id. ¶ 30). "The notice indicated 'We have your vehicle because you broke promises in our agreement. We will

sell your vehicle at private sale sometime after August 25, 2019. You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments) including our expenses.'" (Id.).

On August 20, 2019, plaintiff called defendant and spoke with "a representative named Mark," who "was unable to provide any relevant information, including the amount of money necessary to regain possession of the RV or the location of the RV." (Id. ¶ 31). "Mark provided the name and telephone number for United Auto Recovery and advised that United Auto Recovery would be able to provide more information." (Id.). Mark instructed plaintiff to "call him again later to obtain a detailed cost breakdown to have the RV returned." (Id.).

Plaintiff next spoke with two representatives of United Auto Recovery, who "were only able to inform Plaintiff that their company was instructed to recover the RV and they did not know why a US Bank representative would instruct Plaintiff to call them for more information." (Id. ¶ 33). They also instructed plaintiff to contact Goines Towing and Recovery, and a representative there informed plaintiff that "Goines had, in fact, towed the RV to a Goines facility on August 13, 2019, and that the RV was taken away from that facility by another company on August 19, 2019." (Id. ¶ 35). Plaintiff alleges further communications with defendant's representatives on August 20, 2019, as follows:

> After speaking with Goines, Plaintiff made a second call to [defendant] and was connected to an individual named Renee. Renee did not have detailed information for Plaintiff's account or the location of the RV, but she offered to place a 'hold' on the sale of the RV with the auction company scheduled to sell the vehicle. She also stated that [defendant] would not sell the RV for less than the amount owed on the account. At approximately 4:15 pm on August 20, 2019, Renee contacted Plaintiff and provided him with the email address for Mr. Christopher Taulbee, a US Bank representative that could provide Plaintiff with more detailed information regarding the RV and the account. In addition to the contract information for Mr. Taulbee, Renee informed Plaintiff that [defendant] paid Magnum Marine $3,000.00 to take possession of the RV and an additional $1,000.00 to other vendors for the

6

repossession.  Renee also told Plaintiff that any personal property stored in the RV would have been secured during the repossession process.

(Id. ¶¶ 36-39).  "In his final call on August 20, 2019, Plaintiff confirmed with a representative of the State of North Carolina that [defendant] was sent notice of his request for a judicial hearing and that the License and Theft Bureau was no longer involved in the matter due to the request." (Id. ¶ 40).

On August 22, 2019, plaintiff "emailed Christopher Taulbee at Defendant US Bank and asked him to verify the email address provided by Renee," to which Mr. Taulbee replied, "The email is accurate. Thanks."  (Id. ¶ 41).  The next day, plaintiff emailed "a letter to Cristopher Taulbee at the confirmed email address, with a summary of his dealings in relation to the RV from the purchase to the most recent conversations with Defendant US Bank's representatives and asked him specifically '[p]lease do not do anything with the property until we have come to a resolution.'"  (Id. ¶ 42).  "Plaintiff received no response from Mr. Taulbee or anyone else from Defendant US Bank."  (Id.).

On September 9, 2019, plaintiff emailed "a second letter to Christopher Taulbee noting that 'I have not received any type of response from you or anyone else at US Bank. Please update me on the status of this account at your earliest convenience.' Plaintiff received no response from Mr. Taulbee or anyone else from Defendant US Bank."  (Id. ¶ 43).

On September 15, 2019, plaintiffs received "a notice from Experian and Defendant Trans Union that Plaintiffs' credit score had changed."  (Id. ¶ 44).  "After some research, Plaintiff discovered that the account with Defendant US Bank had been charged off and Plaintiffs' credit report(s) were negatively updated on August 31, 2019."  (Id.).  "Plaintiffs disputed their credit reporting with Defendant Trans Union."  (Id. ¶ 45).  "On October 9, 2019, Defendant Trans Union responded to Plaintiffs' dispute, in writing."  (Id. ¶ 46).

7

Following plaintiffs' dispute and "after it allegedly conducted a proper investigation of Plaintiffs' reporting," according to the complaint, defendant Trans Union "failed to accurately update Plaintiffs' reporting." (Id. ¶ 47). In addition, defendant Trans Union allegedly "failed to note Plaintiffs' reporting as 'disputed.'" (Id. ¶ 48).

On November 1, 2019, plaintiff received a call from "an unnamed person claiming to represent Defendant US Bank." (Id. ¶ 49). According to the complaint, the "unnamed US Bank representative initially informed Plaintiff that the RV was repossessed due to non-payment." (Id.). "Plaintiff informed the representative that that could not be accurate as the account was always current." (Id.).

"Upon hearing Plaintiffs' explanation of the dispute regarding the alleged storage lien and repossession of the RV, the unnamed US Bank representative said that Defendant US Bank repossessed the RV because it was collateral for Plaintiffs' account and was in jeopardy, allegedly giving Defendant US Bank the right to repossess it." (Id. ¶ 50). "The unnamed US Bank representative also informed Plaintiff that the RV was sold at auction for $5,200.00 and Plaintiffs' account now had a deficiency balance of $13,900.00." (Id. ¶ 51). "The unnamed US Bank representative was unable to provide an explanation as to why Plaintiffs' account was reported as charged off despite always being current." (Id. ¶ 52). "The unnamed US Bank representative advised Plaintiff that until the amount owed was paid, collection calls would continue, and Plaintiffs' credit reports would be updated monthly." (Id. ¶ 53).

"The total amount reported as charged off by Defendant US Bank was $7,997.00." (Id. ¶ 54). "Despite Plaintiffs making a formal dispute, Defendant Trans Union, has declined to change the reporting." (Id. ¶ 55). According to the complaint, "[a]s a result of Defendants' actions and/or inaction, Plaintiffs' credit reputation has been negatively affected, causing Plaintiffs to

incur higher costs for credit." (Id. ¶ 56). Neither defendant allegedly "has taken any action to correct Plaintiffs' account and/or credit reporting." (Id. ¶ 57).

## COURT'S DISCUSSION

A.      Standard of Review

To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.      Analysis

     1.      Breach of Contract

To state a claim of breach of contract, under North Carolina law, a plaintiff "must allege the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497 (1968).

As an initial matter, plaintiffs claim for breach of contract fails because plaintiffs do not assert in the complaint what provision of the contract defendant breached, nor what facts constitute the breach. Rather, plaintiffs merely assert in the complaint that defendant "breached the contract with plaintiffs." (Compl. ¶ 62). In their brief, plaintiffs nonetheless argue that defendant breached

9

the contract by "repossessing the RV and selling it without justification," and "exercis[ing] its remedy of repossession in breach of the [c]ontract." (Pls' Mem. (DE 25) at 5-6).

In addition, and in the alternative, accepting for purposes of the instant analysis that these theories of breach of contract are actionable, plaintiffs fail to allege facts supporting the assertion that defendant repossessed the RV and sold it "without justification" under the terms of the contract. (Id.). To the contrary, the complaint alleges that plaintiff engaged in conduct in several respects triggering a "default" under the terms of the contract. (DE 21-1 at 2). First, plaintiff "attempt[ed] to sell" the RV without any alleged "prior written consent" from defendant," (id.), when plaintiff executed an agreement with Magnum Marine "to sell the RV." (Compl. ¶ 13). Second, plaintiff failed to perform the obligation to "keep the Property in [his] possession," (DE 21-1 at 2), when he delivered the RV to Magnum for sale, and it was located for a time at "Magnum's physical location," and the "Magnum lot." (Compl. ¶¶ 13, 16-18, 24). Third, plaintiff failed to "do whatever is necessary to keep [defendant's] claim to the Property ahead of the claim of anyone else," (DE 21-1 at 2), when plaintiff delivered the RV to Magnum. (Compl. ¶¶ 13, 16-18, 24).

Because of these events of default, the contract allowed defendant to exercise "all of the remedies provided by law and this Contract," including: "immediately take possession of the Property" and "then sell the Property." (DE 21-1 at 2). Therefore, plaintiffs have not alleged facts in the complaint supporting the asserted breach, based upon defendant's "repossessing the RV and selling it without justification," and "exercis[ing] its remedy of repossession in breach of the

10

"[c]ontract."  (Pls' Mem. (DE 25) at 5-6).  Where plaintiffs have not alleged facts supporting the asserted breach, plaintiffs' breach of contract claim fails as a matter of law.[5]

Plaintiffs' arguments to the contrary are unavailing.  Plaintiffs argue, for example, that they were not in default, based on the allegations in the complaint, because "the account was, at all times, current."  (Pls' Mem. at 5 (citing Compl. ¶ 49)).  However, a default may be triggered, under the terms of the contract, for many reasons apart from currentcy of the account.  Indeed, it states in plain terms "[y]ou will be in default on this Contract if you fail to perform any obligation that you have undertaken in this Contract."  (DE 21-1 at 2).  And, immediately preceding that sentence the contract specifies plaintiffs "ownership and duties toward property," including to "keep the Property in [their] possession," "not attempt to sell the Property . . . without our prior written consent," and "do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else."  (Id.).

Plaintiffs also argue that "the Complaint demonstrates that Plaintiffs took the appropriate action to address and dispute the Alleged Lien made by the Vender to protect US Bank's interests as required by the Contract."  (Pl's Mem. at 5-6 (citing Compl. ¶¶ 25, 28)).  The court accepts, for purposes of the instant motion, that plaintiffs took appropriate action to address and dispute the alleged lien, once it was noticed.  However, the default in this instance is based upon plaintiffs' alleged conduct precipitating the alleged lien in the first place, comprised of attempting to sell the RV and transferring possession of the RV to Magnum.  (See, e.g., Compl. ¶¶ 13, 16-18, 24).

Plaintiffs further argue that they did not trigger a default by attempting to sell the RV, because there is no allegation in the complaint that they did not have prior written consent of

---

[5]      Because plaintiffs do not allege sufficient facts establishing a breach of contract claim, the court does not reach defendant's alternative argument that plaintiffs' own material breach of the contract precludes plaintiffs' claim in this case.

defendant. According to plaintiffs, defendant impermissibly assumes that plaintiff did not have defendant's consent, where the court must instead presume that plaintiff did have such consent. This argument, however, misapplies the pleading standard. To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true," to state a plausible claim for relief. Iqbal, 556 U.S. at 678. The pleading standard does not require the court to fill in facts that are not alleged in the complaint. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.[6] The burden is thus on plaintiffs to supply sufficient facts to support a plausible inference of unjustified repossession of the RV by defendant. Iqbal, 556 U.S. at 678. Here, there are no facts alleged in the complaint upon which to infer plausibly that defendant provided plaintiffs prior written consent to attempt to sell the RV. While it is "conceivable" that defendant could have provided that consent, it is not "plausible" to infer that it did. Twombly, 550 U.S. at 547. The only alleged facts regarding sale of the RV are that plaintiffs unilaterally undertook to sell the RV. (Compl. ¶ 13). Thus, based on the facts alleged in the complaint, there is no basis to infer an unjustified repossession of the RV by defendant.

In sum, plaintiffs fail to allege facts giving rise to a plausible inference of breach of contract based upon defendant's possession and sale of the RV. Therefore, plaintiffs' breach of contract claim fails as a matter of law and must be dismissed.

---

[6] Plaintiffs' citation to Jenkins v. McKeithen, 395 U.S. 411, 422 (1969), is unhelpful because that case relies upon the superseded pleading standard under which a "complaint should not be dismissed unless it appears that [a plaintiff] could 'prove no set of facts in support of his claim which would entitle him to relief.'" Id. at 422 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Case 7:21-cv-00110-FL   Document 32   Filed 05/02/22   Page 12 of 23

2.    Conversion

Under North Carolina law, there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523 (2012).

Here, plaintiffs' conversion claim is premised upon the assertion that defendant "wrongfully" converted the RV. (Compl. ¶ 67). Plaintiffs argue in their brief that the conversion claim rises or falls on the same basis as the breach of contract claim. (See Pls' Br. at 8). Accordingly, where plaintiffs fail to state a claim for breach of contract, and where plaintiffs fail to allege facts giving rise to an inference of wrongful possession by defendant, plaintiffs' conversion claim fails as a matter of law and must be dismissed.[7]

3.    Fraud

Plaintiffs claim that defendant engaged in fraud by representing to plaintiffs, on August 20, 2019, "that it would place a 'hold' on the sales process" and "that the RV and its contents would not be sold at auction." (Compl. ¶ 70).

The elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494 (1974). The assertion of "a promise which is not fulfilled is not sufficient to support a finding of a false representation unless the evidence shows the promisor made the promise with no intention of fulfilling it." Britt v. Britt, 320 N.C. 573, 579 (1987). A mere allegation "of nonperformance is not sufficient to establish the necessary fraudulent intent." Id. at 580.

---

[7]    Because plaintiffs' conversion claim must be dismissed on this basis, the court does not reach defendant's argument based upon the economic loss rule.

13

To state a claim for fraud on the basis of an unfulfilled promise, a complaint must allege "with sufficient particularity facts from which legal fraud arises or, where proof of actual fraud is necessary to relief, specifically alleges the fraud—that is, the fraudulent intent—and particularizes the acts complained of as fraudulent so that the court may judge whether they are at least prima facie of that character." Hoyle v. Bagby, 253 N.C. 778, 781 (1961). "[T]o be fraudulent the intent not to [perform] must have existed in the defendant's mind at the time he made the promise which induced the plaintiff" to act. Id.

Here, plaintiffs base their fraud claim on an allegedly unfulfilled promise that defendant "would place a 'hold' on the sales process" and "that the RV and its contents would not be sold at auction." (Compl. ¶ 70). As an initial matter, none of factual allegations in the complaint support the claim that defendant made the promises asserted as a basis for plaintiffs' claim in paragraph 70 of the complaint. Rather, plaintiffs allege that on August 20, 2019, plaintiff "was connected to an individual named Renee," who "did not have detailed information for Plaintiff's account or the location of the RV, but she offered to place a 'hold' on the sale of the RV." (Compl. ¶ 36) (emphasis added). According to the complaint, "[s]he also stated that [defendant] would not sell the RV for less than the amount owed on the account." (Id.) (emphasis added). Renee "also told Plaintiff that any personal property stored in the RV would have been secured during the repossession process." (Id. ¶ 39) (emphasis added). Thus, plaintiffs have not pleaded the contents of the asserted fraudulent statements with particularity.

In addition, and in the alternative, plaintiffs do not allege any facts from which it can be inferred that defendant "made the promise[s] with no intention of fulfilling" them. Britt, 320 N.C. at 579. After the asserted promises were made on August 20, 2019, plaintiff was informed on November 1, 2019, that "the RV was sold at auction for $5,200.00 and Plaintiffs' account . . . had

a deficiency balance of $13,900.00." (Id. ¶ 51). This mere suggestion "of nonperformance" of the asserted promises "is not sufficient to establish the necessary fraudulent intent." Britt, 320 N.C. at 580. There are no allegations otherwise giving rise to a plausible inference that "intent not to [perform] must have existed in the defendant's mind at the time he made the promise which induced the plaintiff" to act. Hoyle, 253 N.C. at 781.

In sum, plaintiffs fail to plead facts sufficient to state a claim of fraud. Therefore plaintiffs' fraud claim is dismissed as a matter of law.[8]

4.      Unfair and Deceptive Trade Practices

Plaintiffs assert a claim for unfair and deceptive trade practices, under N.C. Gen. Stat. § 75-1, et seq., on the basis of defendant's actions "in repossessing and disposing of Plaintiffs' RV and its contents and designating Plaintiffs' account as a 'charge off.'" (Compl. ¶ 79).

"In order to establish a violation of N.C.G.S. § 75–1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray v. N. Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75–1.1 is a question of law for the court." Id. "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under . . . N.C.G.S. § 75–1.1." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). "North Carolina law requires a showing of substantial aggravating circumstances to support a claim under the UTPA" on the basis of a breach of contract. Id. (quotations omitted); see DENC, LLC v. Philadelphia Indem. Ins. Co., ___ F.4th ___, 2022 WL 1132150, at *10 (4th Cir. 2022).

---

[8]      Because plaintiffs' fraud claim must be dismissed on this basis, the court does not reach defendant's argument based upon the economic loss rule or pleading fraud with particularity.

In this case, plaintiffs' unfair and deceptive trade practices claim fails as a matter of law for two reasons. First, plaintiffs fail to demonstrate that the asserted conduct, repossession and sale of the RV and charge off of the account, was even a breach of the contract between the parties under the circumstances alleged. Where the asserted conduct does not form the basis of a breach of contract governing the parties' relationship, it cannot provide a basis in this instance to support a claim for unfair and deceptive trade practices. See Broussard, 155 F.3d at 347; DENC, 2022 WL 1132150 at *10.

Second, the asserted conduct does not constitute "substantial aggravating circumstance[s]" necessary to support an unfair and deceptive trade practices claim, id., because the asserted conduct is part of the remedies allowed by the contract in the event of a default, as alleged here. (See, e.g., DE 21-1 at 2 ("We may require you to immediately pay us . . . the remaining unpaid balance of the amount financed . . . .We may immediately take possession of the Property . . . . We may then sell the Property and apply what we receive . . . toward your obligations.").

Therefore, plaintiffs' claim for unfair and deceptive trade practices, under N.C. Gen. Stat. § 75-1 et seq. fails as a matter of law and must be dismissed.

5. Fair Credit Reporting Act

Plaintiffs assert defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1) in the following respects: 1) "by failing to conduct an investigation after receiving notice that the Plaintiffs disputed the information said Defendant had provided to a consumer reporting agency," 2) "by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any to consumer reporting agencies," 3) "by failing to review all relevant information provided by the consumer reporting agency," 4) "by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to consumer reporting agencies," and 5) "by failing

16

to notify all consumer reporting agencies that the reporting of the Defendant's accounts were inaccurate, incomplete, false, and misleading." (Compl. ¶¶ 84-87, 89).[9]

The Fair Credit Reporting Act provides the following duties "of furnishers of information upon notice of dispute":

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> (i) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

Critically, to state a claim for a violation of this subsection, as plaintiffs assert here, a plaintiff must allege that a defendant failed to so act "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." Id. Section 1681i(a)(2), in turn, provides:

---

[9] Paragraphs 88, and 91-97, of the complaint are duplicative.

17

> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller . . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

15 U.S.C. § 1681i(a)(2)(A).

As such, § 1681s–2(b), only imposes on a furnisher "an obligation to review the previously disclosed information and report whether it was incomplete or inaccurate <u>upon receipt of a notice of dispute from a CRA [consumer reporting agency]</u>." <u>Saunders v. Branch Banking And Tr. Co. Of VA</u>, 526 F.3d 142, 150 (4th Cir. 2008). "[A] furnisher's duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency." <u>Mavilla v. Absolute Collection Service, Inc.</u>, 539 Fed. App'x. 202, 208 (4th Cir.2013).

Here, plaintiffs do not allege that any consumer reporting agency provided defendant with notice necessary to trigger the investigative duties under § 1681s-2(b)(1). Plaintiffs allege that on September 15, 2019, they "received a notice from Experian and Defendant Trans Union that Plaintiffs' credit score had changed," and that "Plaintiffs disputed their credit reporting with Defendant Trans Union." (Compl. ¶¶ 44-45). Plaintiffs also allege that, on October 9, 2019, defendant Trans Union "responded to Plaintiffs' dispute, in writing." (Compl. ¶ 46). Plaintiffs do not allege any facts, however, supporting an inference that defendant Trans Union notified defendant of the dispute. To the contrary, the complaint alleges that defendant Trans Union "failed to note Plaintiffs' reporting as 'disputed,'" and "[d]espite Plaintiffs making a formal dispute, Defendant Trans Union has declined to change the reporting." (Compl. ¶ 48).

Plaintiffs' claim against defendant under the Fair Credit Reporting Act thus fails as a matter of law and must be dismissed.

18

6.    Fair Debt Collection Practices Act

Plaintiffs claim that defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 et seq. in several respects, including by failing to provide proper identification in collection

calls, and by making misleading representations in attempts to collect a debt.  The Fair Debt

Collection Practices Act, however, only prohibits a "debt collector" from engaging in such

conduct.  15 U.S.C. § 1692d.

> The term "debt collector" means any person who uses any instrumentality of
> interstate commerce or the mails in any business the principal purpose of which is
> the collection of any debts, or who regularly collects or attempts to collect, directly
> or indirectly, debts owed or due or asserted to be owed or due another.
> Notwithstanding the exclusion provided by clause (F) of the last sentence of this
> paragraph, the term includes any creditor who, in the process of collecting his own
> debts, uses any name other than his own which would indicate that a third person
> is collecting or attempting to collect such debts. For the purpose of section 1692f(6)
> of this title, such term also includes any person who uses any instrumentality of
> interstate commerce or the mails in any business the principal purpose of which is
> the enforcement of security interests. The term does not include--
>
> (A) any officer or employee of a creditor while, in the name of the creditor,
> collecting debts for such creditor;
>
> (B) any person while acting as a debt collector for another person, both of whom
> are related by common ownership or affiliated by corporate control, if the person
> acting as a debt collector does so only for persons to whom it is so related or
> affiliated and if the principal business of such person is not the collection of debts;

15 U.S.C. § 1692a.

"Stated more simply, this provision defines a debt collector as (1) a person whose principal

purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a

person who collects its own debts, using a name other than its own as if it were a debt collector."

Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 136 (4th Cir. 2016) (emphasis in

original).  The Fair Debt Collection Practices Act thus "regulate[s] only the conduct of debt

collectors, not creditors, generally distinguishing between the two based on whether the person

acts in an agency relationship with the person to whom the borrower is indebted."  Id. at 135.

19

Here, plaintiffs do not allege facts permitting an inference that defendant is a debt collector for purposes of plaintiffs' claims under the Fair Debt Collection Practices Act. There are no facts tending to show that defendant's principal purpose is to collect debts, that it regularly collects debts owed to another, or that it collects its own debts using a name other than its own. Rather plaintiffs allege that defendant is a creditor, to which plaintiffs were indebted for payment of amounts owed under the contract. (Compl. ¶ 9). The alleged communications forming the basis for plaintiffs' Fair Debt Collection Practices Act claim were all made with defendant, and defendant was not "using a name other than its own as if it were a debt collector." Henson, 817 F.3d at 136; (see, e.g. Compl. ¶¶ 30-31, 36-39, 41-43, 49-53).

Plaintiffs argue that they have sufficiently alleged facts meeting the "debt collector" element of the claim based upon a call received on November 1, 2019, "from an unnamed person claiming to represent Defendant US Bank." (Compl. ¶ 49). Plaintiffs refer repeatedly to statements made by this "unnamed US Bank representative." (Id. ¶¶ 49-53). None of these allegations, however, give rise to a reasonable inference that defendant is "a person who collects its own debts, using a name other than its own as if it were a debt collector." Henson, 817 F.3d at 136. Rather, these allegations state that the caller claimed to "represent Defendant US Bank," (Compl. ¶ 49) (emphasis added), and in this manner defendant was not using "a name other than its own." Id. There is, in this instance, no allegation of another name used to collect defendant's debts. Rather, the allegations fall within the statutory exclusion for any "officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A) (emphasis added).

Therefore, plaintiffs' claim under the Fair Debt Collection Practices Act fails as a matter of law and must be dismissed.

7.      North Carolina Debt Collection Act

Plaintiffs claim that defendant violated the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. by making "false representations regarding the character, extent and amount of debt related to Plaintiffs' account in an attempt to collect a debt."  (Compl. ¶ 110).

The North Carolina Debt Collection Act provides, in pertinent part, that "[n]o debt collector shall collect or attempt to collect a debt . . . by any fraudulent, deceptive or misleading representation," such as by "[f]alsely representing the character, extent, or amount of a debt."  Id. § 75-54.  "'Debt collector' means any person engaging, directly or indirectly, in debt collection from a consumer[.]"  N.C. Gen. Stat. § 75-50(3).  "The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article."  N.C. Gen. Stat. § 75-56.

Accordingly, in order to state a claim for violation of the North Carolina Debt Collection Practices Act, once the threshold definitional requirements in § 75-60 are satisfied, a claim for unfair debt collection practices must meet the three requirements for a claim under § 75–1.1: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs."  Gray, 352 N.C. at 68; see Ross v. F.D.I.C., 625 F.3d 808, 817 (4th Cir. 2010).

Here, accepting for purposes of the instant analysis that plaintiffs have alleged the threshold definitional requirements for a claim, plaintiffs have not alleged facts giving rise to an inference that defendant attempted to collect a debt by "[f]alsely representing the character, extent, or amount of a debt" id. § 75-54, or other unfair act, "which proximately caused injury to plaintiffs."  Gray, 352 N.C. at 68.

Plaintiffs suggest in their brief that statements made in a call from defendant's representative on November 1, 2019, satisfy the requirements for a claim. (See Pls' Br. at 12). Plaintiffs allege, for example, that the "unnamed US Bank representative initially informed Plaintiff that the RV was repossessed due to non-payment," and that this was false. (Compl. ¶ 49). Plaintiffs have not alleged, however, any facts giving rise to an inference that this false representation "proximately caused injury to plaintiffs," Gray, 352 N.C. at 68, where it is alleged that plaintiff in the call himself "informed the representative that that could not be accurate as the account was always current." (Compl. ¶ 49).

Plaintiffs also suggest that defendant made false and misleading statements because the representative on the November 1, 2019, call "could not explain why Plaintiffs' account was designated a 'charge off' and that collection calls would continue until the amount 'owed' was paid in full." (Pls' Br. at 12). Plaintiffs assert that their account "was always current and because Plaintiffs legally challenged the Alleged Lien, US Bank's interest in the RV was never in peril." (Id.). In other words, plaintiffs contend, "there was no default under the Contract." (Id.).

As determined previously, however, with respect to plaintiffs' breach of contract claim, there were several events of default based upon the allegations in the complaint, none of which were impacted by the issue of whether plaintiffs' properly challenged the alleged lien that was placed on the RV. (See, e.g., Compl. ¶¶ 13, 16-18, 24; DE 21-1 at 2). Accordingly, the facts alleged do not permit an inference that the alleged statements on November 1, 2019, regarding charge off or amounts owed were false or misleading. In addition, and in the alternative, plaintiffs have not alleged facts permitting an inference that plaintiffs' damages were proximately caused by any false statements made on November 1, 2019.

22

In sum, plaintiffs fail to allege sufficient facts permitting a plausible inference of liability under the North Carolina Debt Collection Act. Therefore, this claim fails as a matter of law and must be dismissed.

## CONCLUSION

Based on the foregoing, defendant U.S. Bank, N.A.'s motion to dismiss (DE 39) is GRANTED. Plaintiffs' claims against defendant U.S. Bank, N.A. are DISMISSED WITHOUT PREJUDICE. The court LIFTS the stay imposed September 21, 2021, and DIRECTS plaintiffs and remaining defendant Trans Union LLC to confer and file, within 14 days of the date of this order, a renewed Rule 26(f) report, in accordance with the court's August 16, 2021, initial order regarding planning and scheduling (DE 22).

SO ORDERED, this the 2nd day of May, 2022.


LOUISE W. FLANAGAN
United States District Judge